UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN COUNCIL OF THE BLIND OF NEW YORK,
INC., and MICHAEL GOLFO, *on behalf of themselves and
all others similarly situated*,

Plaintiffs,

-v-

CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF TRANSPORTATION, ERIC
ADAMS, *in his official capacity as Mayor of the City of
New York*, and YDANIS RODRIGUEZ, *in his official
capacity as Commissioner of the New York City
Department of Transportation*,

Defendants.

18 Civ. 5792 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

On October 20, 2020, the Court issued a decision finding New York City liable for

violating federal and state anti-discrimination laws, by failing to make the New York City

pedestrian grid meaningfully accessible to blind or low-vision persons. *See Am. Council of the

Blind of N.Y., Inc. v. City of New York et al.*, 495 F. Supp. 3d 211 (S.D.N.Y. 2020).  On

December 27, 2021, the Court issued a decision setting forth in detail the steps New York City

would be required to take to remedy those violations. *See Am. Council of the Blind of N.Y., Inc.

v. City of New York et al.*, 579 F. Supp. 3d 539 (S.D.N.Y. 2021).  A central command was that

the City install accessible pedestrian signals ("APS") on a pace that would result in 10,000

signalized intersections being equipped with APS by the end of 2031. *Id.* at 543.  On March 18,

2022, the Court issued an implementing remedial order, setting forth the operational detail

necessary to guide implementation of those remedies.  Dkt. 208.  At the parties'

recommendation, *see* Dkt. 199 (joint letter), the Court appointed Andrew W. Schilling, Esq., as

Independent Monitor ("Monitor"), with responsibilities including reporting neutrally to the Court on the City's progress implementing the remedial order, *see* Dkt. 202.  On February 28, 2023, the Monitor filed his first annual report, covering 2022.  Dkt. 246 (the "Report").

The Court has reviewed the Report with interest—and admiration.

The Report reflects tremendous progress by the City during 2022.  The City had been obligated under the remedial order to install 400 APS during 2022.  *Am. Council of the Blind of New York, Inc.*, 579 F. Supp. 3d at 584.  The City far exceeded—in fact, it blew past—that target.  Its Department of Transportation ("DOT"), directly and through contractors, installed 494 APS—94 (23.5%) more than mandated.  *See* Report at 2–3.

Consistent with the remedial order, the new APS were widely distributed.  *See id.* at 3, 17–20.  As the Report reflects, many APS were installed in each borough.  *See id.*  APS, in general, were widely dispersed, too, within the boroughs.  *See id.*

The City also made substantial progress in 2022 in each category in which it had been directed to prioritize the installation of APS.  *See id.* at 20–30.  These included at intersections that had been the subject of public request and at intersections equipped with signal-timing mechanisms that, in the absence of APS, presented special hazards for the blind.  *See id.*

The Report is, further, encouraging as to future installations of APS and as to the City's ability to meet the installation milestones the Court has set for the coming years: 500 in 2023; 700 in 2024; and 900 in each of 2025 and 2026.  *Am. Council of the Blind of N.Y., Inc.*, 579 F. Supp. 3d at 584–85; *see also* Report at 11.  It reports that the City has tripled the number of contractors whom it has retained to install APS, *see* Report at 24, and that the City has secured full funding for the required APS installations through at least 2026, *see id.* at 35–36.

2

The above is all welcome news. The progress described throughout the Report reflects concerted and purposeful efforts by dedicated public servants and professionals. In real terms, it means that, in 2023, blind and visually impaired residents will find it safer and easier to navigate this complex metropolis on foot than they did the previous year, with further progress to come. At a time when many are regrettably cynical about the capacity of government to do the people's business, the City's execution of its responsibilities in this matter—going above and beyond the pace of remediation that the Court required—should rightly inspire confidence.

The Court wishes to salute all persons whom the Report describes as having had a hand in implementing the remedial order. The Court particularly wishes to commend Joshua Benson, the DOT's deputy commissioner for traffic operations, whom the Court understands has led the team responsible for APS implementation. The Court also wishes to commend the Monitor, for his outreach to DOT, the public, plaintiffs' counsel, and others as called for by the remedial plan, and for his thoughtful and detailed Report. The Report reflects ongoing challenges and spotlights areas for improvement as the remedial plan moves forward in 2023. *See id.* at 36–41. But the Report leaves the Court confident that the responsible parties are attending to their duties with dispatch, competence, and attention to the public interest.

By separate communication, the Court will arrange for an informal conference with the Monitor, Mr. Benson, and plaintiffs' counsel to review the challenges ahead and discrete issues raised by the Monitor's Report.[1]

---

[1] The Court has revised the caption of this case, to reflect that the positions of Mayor of the City of New York and Commissioner of the Department of Transportation—previously held, respectively, by Bill de Blasio and Polly Trottenberg—are now held, respectively, by Eric Adams and Ydanis Rodriguez; and that Christina Curry is no longer participating as a plaintiff.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: March 6, 2023
       New York, New York