**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

AMERICAN COUNCIL OF THE BLIND OF NEW
YORK, INC., MICHAEL GOLFO, and CHRISTINA
CURRY, *on behalf of themselves and all others*
*similarly situated,*

Case No. 18 Civ. 5792 (PAE)

                    *Plaintiffs,*

~~[PROPOSED]~~ ORDER

            v.

CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF TRANSPORTATION, ERIC
ADAMS, *in his official capacity as Mayor of the City*
*of New York,* and YDANIS RODRIGUEZ, *in his*
*official capacity as Commissioner of the New York City*
*Department of Transportation,*

                    *Defendants.*

WHEREAS, the Remedial Order (Dkt. 208) requires the Independent Monitor to report to the Court with respect to the City's compliance with the Remedial Order; and

WHEREAS, the Remedial Order authorizes the Independent Monitor to recommend improvements in the implementation of the Remedial Order and corrective action to achieve compliance; and

WHEREAS, in his Fourth Annual Report (Dkt. 335), the Independent Monitor found, among other things, that:

(1) the City installed APS at a number of intersections during 2025 in a manner that did not comply with the MUTCD, including installations that were not compliant with MUTCD Guidance with respect to APS volume and placement, as required by this Court's orders dated May 15, 2024 (Dkt. 281 ¶ 1) and May 27, 2025 (Dkt. 310 ¶ 3(A)); and

(2) the City does not yet have a complete program in place that "proves effective at ensuring that APS are installed and maintained in compliance with the MUTCD[,]" as required by the Court's order dated May 15, 2024 (Dkt. 281 ¶ 2); and

WHEREAS, the Independent Monitor made specific recommendations in the Third Annual Report (Dkt. 299) to improve the City's compliance with the MUTCD; and

WHEREAS, the Independent Monitor found in his Fourth Annual Report that the City did not take certain actions in 2025 that were recommended by the Independent Monitor in his Third Annual Report (*Id.* at Recommendations 3, 4, and 5), including with respect to APS volume and APS placement in relation to the crosswalk; and

WHEREAS, having reviewed the Fourth Annual Report and considered input from the parties and the Independent Monitor, including at a conference held on May 6, 2026, the Court finds that the recommendations made by the Independent Monitor are evidence-based, sensible, and proportionate; and

THEREFORE, the Court orders as follows with respect to the Independent Monitor's recommendations:

1. **APS Volume**

A.    By no later than June 30, 2026, the City shall establish and submit to the Court a written action plan that describes the steps that the City has taken and will take to ensure that volume settings on each APS unit are set and maintained at levels that comply with MUTCD requirements, including the requirements that (i) locator tones should be audible "6 to 12 feet from the push button, or to the building line, whichever is less" (MUTCD 4K.04(08)); and (ii) audible walk indications (including speech messages) should be audible "at the beginning of the associated crosswalk" (MUTCD 4K.03(05)).

2

B.    The City's written action plan shall include the following:

(i)    A list of all intersections at which a Campbell/PedSafety-manufactured APS device was installed under the Remedial Order prior to April 22, 2026;

(ii)    A copy of APS standard volume settings specific to each manufacturer;

(iii)    A copy of all written directions or instructions issued to APS inspectors regarding the APS standard volume settings issued on or after April 22, 2026;

(iv)    Written guidance for APS inspectors explaining when and how to adjust such standard settings upward or downward based on the particular environment;

(v)    A copy of a revised APS Compliance Form (i.e. webform) that records an assessment of the volume of audible walk indication volumes, including speech messages; and

(vi)    A schedule for the inspection of all intersections at which a Campbell/PedSafety-manufactured APS device was installed under the Remedial Order prior to April 22, 2026.

C.    To allow adequate monitoring, the City shall maintain records sufficient to show whether volume settings are adjusted away from standard settings to account for the particular environment and the adjusted levels that were set. Such a record of the volume settings and any adjustments shall be included on all compliance inspection reports completed at the time of installation or subsequent inspection.

D.    The City shall (i) identify all Campbell/PedSafety APS that were installed under the Remedial Order prior to April 22, 2026; (ii) inspect all such APS for compliance with the volume

requirements of the MUTCD and this Order; (iii) adjust the volume settings on those inspected units as necessary to comply with the MUTCD and this Order; and (iv) maintain a record of such inspection and any adjustment. Such records shall be detailed enough to identify the direction and nature of the volume adjustment (such as whether relating to locator tone, audible walk indication, speech message, daytime settings, or nighttime settings). By December 31, 2026, the City shall complete inspections for no fewer than 50% of all identified Campbell/PedSafety APS that were installed under the Remedial Order prior to April 22, 2026, and shall complete the inspections of the remaining identified Campbell/PedSafety APS by June 30, 2027. Installations of APS devices that are inspected after April 22, 2026 in accordance with DOT's standard operating procedures need not be re-inspected under the terms of this Order provided that such inspections satisfy all the terms of this Order, including its documentation requirements.

2.    **Deviations from MUTCD Guidance**

A.    The City shall not deviate from the Guidance provisions set forth in Chapters 4K and 4I of the MUTCD relating to the installation of APS unless such deviation is made in accordance with "engineering judgment" or an "engineering study," as those terms are defined in the MUTCD (*see* MUTCD 1C.01(01)(B); 1C.02(76) & (77)), and unless such deviation complies with established, written procedures and criteria established by an engineer, including DOT's APS Placement Memo dated March 16, 2026, or any revised version thereafter. For the avoidance of doubt, the City may not deviate from MUTCD Guidance in the installation of APS for reasons of cost and/or efficiency alone, including for the sole purpose of taking advantage of a pre-existing pole at the intersection if that pole is not in an MUTCD-compliant location.

B.    Whenever the City exercises "engineering judgment" to deviate from MUTCD Guidance, it shall contemporaneously document in writing the reason and support for such

engineering judgment and deviation. For any deviations that arise due to recurring or common conditions, DOT shall also consult with the APS Advisory Committee and/or other certified orientation and mobility specialists and shall maintain a record of such consultation. In addition, the City shall, in its monthly reporting of APS installations, identify each APS installation at which engineering judgment was used to deviate from MUTCD Guidance and provide a brief, shorthand description of the reason for the deviation to the extent that information is available to DOT at the time of the report. To the extent the City relies on as-built drawings to satisfy its obligation for documentation, the City shall provide those as-built drawings to the Independent Monitor and Plaintiffs on a rolling or periodic basis as the as-built drawings become available, but no later than at the time of the City's bi-annual report. To the extent the City maintains additional supporting documentation, such additional documentation shall be provided to the Independent Monitor and Plaintiffs promptly upon request.

3. **Enhanced Reporting of Public Complaints and Complaint Resolution**

Beginning July 1, 2026, whenever the City dispatches a compliance inspector to inspect an APS in response to a complaint or repair request, the City shall require that its inspector document, on the APS compliance report, the nature of the complaint or repair request that prompted the inspection and the resolution of the issue. To allow adequate monitoring, such reporting shall be maintained in a manner that facilitates consistent reporting and enhanced data analysis. The City shall develop revised compliance inspection reports that include functionality to capture such data in a manner that facilitates consistent reporting and enhanced data analysis and shall complete these program revisions by no later than December 31, 2026. Until such time as the compliance reports are updated to facilitate consistent reporting and enhanced data analysis, the City shall, as

an interim measure, instruct its compliance inspectors to document the nature of the complaint or repair request in narrative form in the comments field of the existing form.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated:  May 21, 2026
        New York, New York

6